IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JULIAN M.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:20cv481 |
| | ) |
| KILOLO KIJAKAZI[2], | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Julian M. ("Julian") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381-1383f. Julian had previously sought judicial review of a final decision denying his claim for disability benefits and this court remanded his case to the Commissioner for further administrative proceedings. Julian alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) assess his mental impairments; (2) determine his RFC using a function by function analysis; and (3) assess his allegations regarding his symptoms.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

Summary Judgment (Dkt. 17) and **DENYING** Julian's Motion for Summary Judgment (Dkt. 15).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Julian failed to demonstrate that he was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

## CLAIM HISTORY

Julian filed for SSI and DIB in October 2013, claiming that his disability began on September 29, 2013, due to broken pelvis, arm, and jaw, a lacerated spleen and liver, and depression and anxiety.[4] R. 109, 235, 237. In December 2016, after holding a hearing, ALJ James Grimes issued an unfavorable ruling denying Julian's claim. R. 12–33, 40–82. The Appeals Council denied Julian's request for review and Julian filed a civil action in this court challenging that decision. See Julian M. v. Berryhill, Case No. 7:17cv504. This court reversed the Commissioner's decision and remanded Julian's case for further administrative proceedings on January 15, 2019. The Appeals Council then vacated ALJ Grimes' decision and sent the case to ALJ David S. Lewandowski for rehearing, instructing the ALJ to consolidate the claims with a new SSI claim filed on November 11, 2017, issuing a new decision on the consolidated claims. R. 2073–76.

ALJ Lewandowski held a hearing in January 2020. At the hearing, Julian testified that he returned to substantial gainful activity on October 14, 2019 and requested a closed period of disability through that date.[5] R. 1947. Counsel represented Julian at the hearing, which included testimony from vocational expert Asheley Wells. The ALJ issued a second unfavorable decision on April 28, 2020, analyzing Julian's claims under the familiar five-step process[6] and denying his claim for benefits. R. 1946-70.

---

[4] Julian was 26 years old on his alleged onset date, making him a younger person under the Act, and his age category was unchanged at the time of the ALJ's decision. R. 1956.

[5] The ALJ found Julian's date last insured was December 31, 2016; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 1949; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[6] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform

The ALJ found that Julian suffered from the severe impairments of degenerative disc disease, fractures of pelvis and left arm, depressive disorder, anxiety disorder, and opioid, benzodiazepine, alcohol, and cocaine use disorders. R. 1950. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 1951. The ALJ specifically considered listing 1.02 (major joint dysfunction), listing 1.06 (fracture of the femur, tibia, pelvis, or one or more of the tarsal bones), listing 1.04 (spinal disorders), listing 1.07 (fracture of an upper extremity), listing 12.04 (depressive, bipolar, and related disorders), and listing 12.06 (anxiety and obsessive-compulsive disorders). R. 1951. The ALJ found that regarding his mental impairments, Julian had no more than moderate limitations in understanding, remembering, and applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. R. 1951–55.

The ALJ concluded that Julian retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 1956. Specifically, Julian can never climb ladders, ropes, or scaffolds, can only occasionally climb stairs/ramps, tolerate exposure to industrial hazards, temperature extremes, wetness, humidity, and vibrations, and can frequently perform postural activities. Id. Julian can understand, remember, and carry out simple instructions, and perform simple tasks requiring no more than occasional interaction with others, and can exercise simple judgment and make simple decisions. Id. However, he should avoid fast-paced work, meaning jobs that require moving rapidly with a high productivity level, tight deadlines, or a

---

other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

quick turnaround, such as in assembly line work or a server/bartender in a crowded restaurant. Id. Julian is also expected to be absent from work 12 days per year and be off task 10% of the workday outside of normal breaks. The ALJ determined that Julian was unable to perform his past relevant work as a cabinetmaker and installer, construction worker, and laborer, but that he could perform jobs that exist in significant numbers in the national economy, such as night cleaner, office helper, and private mail clerk. R. 1968–69. Thus, the ALJ determined that Julian was not disabled. R. 1970. Julian filed for direct review of the unfavorable ALJ decision in this court.[7] See 20 C.F.R. § 404.984(d); Massey v. Saul, No. 1:19 CV 152 WCM, 2020 WL 4569606, at *1 (W.D.N.C. Aug. 7, 2020) (noting that "When a case is remanded by a federal court, the subsequent decision of the ALJ will become the final decision of the Commissioner unless the Appeals Council assumes jurisdiction over the case")

## ANALYSIS

Julian alleges that the ALJ failed to properly assess his mental impairments, determine his RFC using a function by function analysis, and assess his allegations regarding his symptoms.

**A. Medical History Overview**

1. Physical Impairments

On Julian's alleged disability onset date of September 29, 2013, he was injured in a single-vehicle car accident where he fractured his pelvis, left arm, shoulder, sacrum, and facial

---

[7] The Notice of Decision – Unfavorable, dated April 28, 2020, from the ALJ states:

> If you do not file written exceptions and the Appeals Council does not review my decision on its own, my decision will become final on the 61st day following the date of this notice. After my decision becomes final you will have 60 days to file a new civil action in Federal district court. You will lose the right to a court review if you do not file a civil action within the [time period provided].

R. 1943–45.

bones, and lacerated his liver and spleen, while driving intoxicated.[8] R. 940–56, 966. Julian underwent surgeries, including for his left arm, pelvis, and face, and subsequent in-patient physical therapy, and was discharged from the hospital on October 16, 2013. R. 363, 958–60. At follow-up visits throughout the remainder of the relevant period, he continued to complain of back pain, which he had suffered from even prior to the motor vehicle accident.[9] R. 712, 717, 736, 724, 911. On exam he generally had thoracic tenderness, but a stable gait, normal lumbar range of motion, and no sensory deficits. See e.g. R. 812, 1567–68, 2286. Julian underwent additional surgery to remove glass fragments from his left arm in March 2015 and complained of left arm pain and numbness throughout the relevant period. R. 1623, 3307, 2271. An x-ray of his left arm in March 2018, showed a healed fracture, no interval change, and hardware in good position. R. 2268.

2. Mental Impairments

Julian has been diagnosed with anxiety and depression, as well as substance abuse disorders. As the ALJ noted, the medical evidence from 2013 to 2015 shows exacerbations of symptoms related to his mental impairments, "often associated with relapses on alcohol or other substances." R. 1959. Julian had multiple in-patient hospitalizations during this period, as well as outpatient mental health treatment in a Suboxone program. R. 854–58, 881–87, 1533–35, 1538, 1541, 1631–32, 1783, 1863, 1895. Ultimately, the clinic discharged Julian for non-compliance in May 2015, after a second infraction of the Suboxone rules for abusing Valium, with the first infraction in January 2015. R. 1782–85. From early 2016, Julian continued his psychiatric

---

[8] As the ALJ noted in his opinion, several locations in the medical record characterize the accident as "a suicide attempt in which he had crashed his car into a tree." R. 1627, 1631, 1635, 1773, 1959.

[9] According to a record from August 2014, Julian's low back pain prior to the motor vehicle accident can be traced to a "back injury in fourth grade." R. 1568, 1782.

6

therapy, and had some fluctuating anxiety, depression and substance abuse, but experienced general improvement in symptoms as time went on.[10] In January 2018, he reported he was "doing great" to his psychiatrist, indicating he was "feeling really good at home, caring for his kids and rising his chickens, turkeys, hens, ducks and [a dog]." R. 2247. By May 2018, he reported being off recreational drugs and narcotics for over two years, and in November 2018 he requested and received a letter from his primary care provider stating he was mentally stable and was safe to handle a gun, so his gun rights could be restored. R. 2292–93, 2298.

3. Medical Opinion Evidence

In 2014, state agency doctors Michael Cole, D.O. and Bert Spetzler, M.D., reviewed the record and found that Julian was capable of light work and a limited range of light work, respectively. R. 91–92, 121–23.  State agency psychologists, Howard Leizer, Ph.D. and Joseph Leizer, Ph.D., also reviewed the record in 2014, and both assessed one or two episodes of decompensation, while Dr. Howard Leizer found mild difficulties in maintaining social functioning and concentration, persistence, and pace, and Dr. Joseph Leizer found moderate difficulties in maintaining social functioning and concentration, persistence, and pace. R. 89–90, 118–19. In June 2018, state agency doctor Richard Surrusco, M.D., evaluating the more recent SSI claim only, found Julian capable of a limited range of light work, including limitations related to his left upper extremity. R. 2087. The ALJ found Dr. Spetzler's opinion the "most well supported" and consistent with other evidence in the record and gave it significant weight. R. 1964. The ALJ gave Dr. Surrusco's and Dr. Cole's assessments little weight. R. 1964. The ALJ gave psychologist Dr. Joseph Leizer the "most weight", though he qualified this by noting

---

[10] At his hearing before the ALJ in October 2016, Julian testified he had been sober "at least six months." R. 61. At the hearing in January 2020, counsel indicated Julian's history of polysubstance abuse has been in "sustained full remission" since 2015. R. 1991.

consideration of the "errors assigned by the District Court in vacating the prior ALJ decision" and assigning additional limitations in the RFC. R. 1965–66.

### B. Mental Impairments under SSR 96-8P

Julian argues that the ALJ failed to properly assess his mental impairments as required by SSR 96-8P. See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). Specifically, Julian asserts that the ALJ failed to explain how the RFC accommodates his no more than moderate limitations, failed to explain his conclusion that Julian would be absent from work 12 days per year and off task 10% of the workday outside of normal breaks, and failed to provide proper hypothetical questions to the vocational expert. Julian writes, "The ALJ did not adequately discuss plaintiff's mental RFC. Simply limiting plaintiff to simple instructions and task[s], occasional interaction with others and no faced paced work without further detailed explanation does not meet the requirements of SSR 96-8p and does not adequately address plaintiff's moderate limitations in interacting with others or moderate limitations in maintaining concentration, persistence, or pace."[11] Pl.'s Br. at 36, Dkt. 16.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts

---

[11] Julian also states that the ALJ failed to explain how his moderate limitations in understanding, remembering, or applying information and adapting or managing oneself are accommodated by the RFC. However, Julian provides no argument to specifically support these claims. In any event, I find that the ALJ adequately explained and accommodated Julian's moderate limitations in these domains, as well. For example, the ALJ explained that Julian's moderate limitation in understanding, remember, or applying information are "accommodated by the work-related limitations that [Julian] is able to understand, remember, and carry out simple instructions, perform simple tasks, exercise simple judgment, and make simple decision." R. 1952. The ALJ also explained that Julian's moderate limitation in adapting or managing oneself are accommodated by his expected absences and a limitation to occasional interaction with others, reducing the types of interactions he considers stressful. R. 1955.

(e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarifies that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). However, Mascio does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176

9

(emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

This is not a situation like Mascio, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence and pace without further analysis. Unlike the claimant in Mascio, the medical evidence here supports the ALJ's conclusion that, despite his moderate limitations in concentration, persistence, or pace, Julian is capable of performing the basic mental demands of light work, with the specified accommodations. Further, here, the ALJ explained why Julian's moderate limitations in concentration, persistence, or pace, and interacting with others did not translate into a limitation in the RFC beyond that imposed:

> Julian can understand, remember, and carry out simple instructions, and perform simple tasks requiring no more than occasional interaction with others, and can exercise simple judgment and make simple decisions. However, he should avoid fast-paced work, meaning jobs that require moving rapidly with a high productivity level, tight deadlines, or a quick turnaround, such as in assembly line work or a server/bartender in a crowded restaurant. Julian is also expected to be absent from work 12 days per year and be off task 10% of the workday outside of normal breaks.

R. 1956.

As a preliminary matter, the ALJ adequately explained what he meant by fast-paced production, specifically explaining it in his opinion as "jobs that require moving rapidly with a high productivity level, tight deadlines, or a quick turnaround." R. 1956. Further, the vocational expert likewise understood what the ALJ meant by the term, as evidenced by the following exchange during the hearing:

> ALJ: Issues, for example, of non-confrontation work environment and no fast-paced production, is that contained in the DOT?
>
> Vocational Expert: The production would be. It wouldn't be contained within, sort of, the environmental, but it would [be] contained within the description.

10

R. 2011. Thus, this case is distinguished from those where the ALJ failed to adequately explain the meaning of the terms such as "production rate" or "demand paced." See e.g. Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019), as amended (Feb. 22, 2019); Perry v. Berryhill, 765 Fed. App'x 869, 872 (4th Cir. 2019) (unpublished).

Contrary to Julian's arguments, the ALJ here explained his reasoning and the RFC in detail, including extensive reference to the medical record and opinions, and specifically corrected errors the District Court found with the prior ALJ opinion. Indeed, the Commissioner goes as far as pointing out how Julian's argument that the ALJ did not adequately explain his conclusions regarding how the RFC accommodates his moderate limitations is "simply copied from [Julian's] prior brief and is not tailored to the current ALJ decision." D.'s Br. at 7, Dkt. 18. Regarding Julian's moderate impairments in concentration, persistence, or pace, the ALJ explained the RFC, including the absences and percentage off task, as follows:

> Specifically, the limitation to simple instruction and tasks and off task behavior addresses [Julian's] "moderate" difficulty in concentrating by eliminating the more detailed instructions and tasks likely to require greater levels of concentration. The claimant's "moderate" limitation in persisting is addressed by the work-related limitations that he is expected to be off-task 10% of the workday outside of normal breaks, and to be absent from work 12 days per year. The elimination of "fast-paced work" as defined below addresses the claimant's "moderate" limitation in maintaining pace.

R. 1954. The ALJ further explained that the limitation concerning absences addresses [Julian's] need to miss work during acute exacerbations of his mood and anxiety symptoms, particularly during relapses. The ALJ also carefully explained how he corrected errors from the prior ALJ opinion, especially regarding Dr. J. Leizer's opinion, noting that he imposed additional RFC limitations beyond "perform[ing] simple routine tasks in an environment with limited stressors," including regarding avoiding industrial hazards, eliminating fast-paced work, assuming a number

of absences, and expecting Julian to only exercise simple judgment and make simple decisions. R. 1965.

Regarding interacting with others, Julian argues that the ALJ "did not explain how plaintiff's moderate limitations . . . are accommodated by finding plaintiff can occasionally interact with others." Pl.'s Br. at 36, Dkt. 16. In this domain, the ALJ acknowledged Julian's mood and anxiety-related symptoms but noted that mental status examination have typically been normal, "apart from routine mood and affect abnormalities." R. 1953. In explaining the RFC, the ALJ referenced Julian's hearing testimony, as well as Dr. J. Leizer's assessment, and the medical record, writing:

> Based on [Julian's] testimony [including that he does not like confrontation, such as arguing with people] and documented mood and anxiety symptoms over the period at issue, [I] conclude[] that [Julian] can have only occasional interaction with others. . . . In addition, [the] limitation concerning work absences addresses [Julian's] need to miss work during acute exacerbations of his mood and anxiety symptoms, particularly during relapses. The limitation concerning simple instructions and tasks also takes into account [Julian's] testimony that he considers multitasking to be stressful.

R. 1966.

Finally, Julian mischaracterizes the ALJ's opinion, arguing that somehow the ALJ conceded that "prior to 2016 [Julian] was unable to perform the basic mental demands of skilled work." Pl.'s Br. at 37.  However, the ALJ merely accurately noted that Julian's "depression and anxiety were indeed 'severe' during the requested closed period" and cited to the medical evidence from 2013 to 2015. R. 1959–60. However, the ALJ specifically stated that the RFC accommodated Julian's mental impairments, including his substance use disorder, during this especially difficult period, and his treatment since 2016 *reinforces the conclusion* that he can perform the basic mental demands of unskilled work, with the appropriate limitations. R. 1961.

### C. Physical RFC and Function-by-Function Analysis

Julian argues that the ALJ's physical RFC findings are not supported by substantial evidence, specifically regarding his "inability to maintain a static work posture, his need to lie down and rest during the day, [and] his difficulty using his left hand . . . ." Pl.'s Br. at 38, Dkt. 16. Julian also contends that the ALJ erred by failing to include manipulative limitations in his RFC findings, despite finding Julian's left arm fracture a severe impairment, and ignored evidence in the record showing back problems, including a limited range of motion and antalgic gait. However, the records Julian points to do not call into doubt the ALJ's RFC findings, which remain supported by substantial evidence. As the Commissioner emphasizes, Julian cites to a treatment note where his treating physician noted left arm weakness; however, this same treatment note indicates that the physician does not feel Julian is unable to work, and, indeed, Julian returned to substantial gainful activity only a few weeks later as a bucket foreman. R. 2271, 1949. Julian's argument amounts to a disagreement with the ALJ's RFC determination and essentially ask the court to reweigh the evidence.

At bottom, the standard in this case is substantial evidence, and in determining whether substantial evidence exists to support the Commissioner's decision, the court must consider the record as a whole. See Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). Applying this standard means that, if substantial evidence supports the Commissioner, the fact that a claimant can point to records, or portions of records, that could also support a different conclusion, does not change the outcome.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions

13

reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p, and contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include a

comprehensive analysis of Julian's medical records, the medical opinions, Julian's hearing testimony, and the ALJ's conclusions. R. 1946–70. The ALJ's opinion explicitly specifies how the limitations in the RFC correlate with his severe impairments. The ALJ takes into consideration Julian's serious injuries from his 2013 motor vehicle crash and his persistent pain complaints since that time, including a limitation to reduced exposure to industrial hazards to account for reports of drowsiness from his medications, as well as off-task behavior to account for chronic pain and medication side effects. R. 1961. Further, the ALJ explained that the exertional limitations imposed, particularly restricting lifting and carrying to light work, would adequately accommodate his upper extremity symptoms. R. 1962–63. While the ALJ acknowledged continued complaints regarding left-hand symptoms, he characterized these symptoms as waxing and waning, with some pain or reduced grip strength, but other exams showing normal range of motion and unremarkable extremities, and adequately explained the RFC. R. 1964. Accordingly, I recommend finding that substantial evidence supports the ALJ's RFC determination.

### D. Subjective Allegations

Julian argues that the ALJ's assessment of his allegations is not supported by substantial evidence. Julian asserts the ALJ did not explain how Julian's activities of daily living, including those cited in his function reports, as well as time spent fishing and completing a chicken coop, which occurred "intermittent[ly]" or only once, undermined his allegations." [12] In support, Julian also cites to his function report indicating that his fiancé "performed most of the household

---

[12] Julian also recites several arguments already touched on, including his complaint that "the ALJ only address[ed] the skill level of work [Julian] can perform and not his ability to sustain work" for a full workday, as well as his confusion about the meaning of the ALJ's statement regarding plaintiff's mental health treatment since 2016. As I addressed these arguments already in this opinion, I will not do so again.

15

chores" and "took care of the bulk of the grocery shopping." Pl.'s Br. at 44, Dkt. 16. The Commissioner maintains that substantial evidence supports the ALJ, emphasizing that Julian has "not lived with his former fiancé since 2015," his treating physician indicated his impairments were not disabling, and he has returned to work. D.'s Br. at 10, Dkt. 18.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c).[13] First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[14] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by

---

[13] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

[14] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

16

medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

The ALJ's opinion includes an extensive discussion of Julian's medical history, as well as Julian's allegations, and the ALJ adequately supported his finding that Julian's allegations were not entirely consistent with the medical evidence and other evidence in the record. The ALJ specifically noted Julian's testimony about regarding his limitations at the hearing in 2016 and in 2020, including both his physical and mental symptoms, and discussed the trajectory of his treatment.

Julian also points Brown, 873 F.3d 251, to support his argument that the ALJ does not explain how his various activities of daily living show that he is capable of completing a full workday. However, this case is distinguished from Brown, where the Fourth Circuit concluded that the ALJ had committed multiple errors, including failing to acknowledge the extent of the daily activities of living, writing:

> With respect to the first reason for the adverse credibility finding, the ALJ noted that Brown testified to daily activities of living that included "cooking, driving, doing laundry, collecting coins, attending church and shopping." See Second ALJ Decision 11. The ALJ did not acknowledge the extent of those activities as described by Brown, e.g., that he simply prepared meals in his microwave, could drive only short distances without significant discomfort, only occasionally did laundry and looked at coins, and, by the time of the second ALJ hearing, had discontinued regular attendance at church and limited his shopping to just thirty minutes once a week. Moreover, the ALJ provided no explanation as to how those particular activities—or any of the activities depicted by Brown—showed that he could persist through an eight-hour workday.

873 F.3d at 263. As an initial matter, Julian is in a different situation from the plaintiff in Brown, as his mental and physical symptoms improved, instead of declined, throughout the relevant period, including the activities he could perform. As the ALJ noted, "generally speaking, [Julian's] psychiatric complaints and objective findings have improved and stabilized since early 2016" culminating in Julian returning to full-time work. R. 1960, 1963.

17

Further, unlike in Brown, the ALJ pointed to more than those daily activities to discount Julian's subjective allegations.[15] Beyond these activities of daily living, the ALJ noted that Julian's allegations were inconsistent with his medical records, including that his alleged lower back and upper and lower extremity problems have been reasonably well-managed with treatment, and his psychiatric complaints and objective findings have both improved and stabilized. R. 1960–62. Finally, the ALJ may properly rely on evidence regarding a plaintiff's routine, non-work activities in rejecting a claim of disability. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005).

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work.  See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Julian's subjective complaints with substantial evidence, and that Julian is capable of performing work at the level stated in the ALJ's opinion.

## **CONCLUSION**

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

---

[15] Also, unlike in Brown, the ALJ here did not fail to consider any doctor's opinions, or wrongly credit a psychiatric medical expert's testimony over the "consistent opinions of [five] treating and examining sources" who found disabling physical limitations. Brown, 873 F.3d at 266.

The clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered: January 5, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge