IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JULIAN M., ) | |
| ) | |
| ) | |
|     Plaintiff ) | Civil Action No. 7:20-CV-481 |
| ) | |
| v. ) | |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner ) | |
| of Social Security, ) | By:  Michael F. Urbanski |
| ) | Chief United States District Judge |
| ) | |
|     Defendant ) | |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation (R&R) on January 5, 2022, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Julian M. (Julian) has filed objections to the R&R and this matter is now ripe for the court's consideration.

### I. Background

Julian filed an application for disability insurance benefits (DIB) and supplemental security income (SSI) on October 11, 2013, alleging disability beginning on September 29, 2013, the day he was seriously injured in a car accident. Julian was 26 years old at the alleged onset date and his "date last insured" for purposes of DIB was June 30, 2015.  In the disability

report he filed at the time he applied for benefits, Julian listed his medical conditions as a broken pelvis, arm, and jaw, a lacerated liver and spleen, and depression and anxiety. R. 262.

A hearing was held in Julian's case and on December 13, 2016, the administrative law judge (ALJ) issued a decision denying Julian's application for benefits. R. 12-33. Julian sought and was denied review by the Appeals Council. R. 1-3. Julian filed a lawsuit in this court challenging the denial and his case was remanded to the Commissioner. Julian M. v. Berryhill, No. 7:17cv504 (W.D. Va. remanded Jan. 15, 2019).[1] On March 8, 2019, the Appeals Council vacated the first decision of the ALJ, ordered a new ALJ to hold a rehearing, and instructed the ALJ to consolidate the claims with a new SSI claim Julian filed on November 11, 2017. R. 2075-76.

A second hearing was held before ALJ David S. Lewandowski on April 28, 2000. Julian appeared and testified, as did a vocational expert. At the hearing, it was established that Julian began working at a job that qualified as substantial gainful activity on October 14, 2019. R. 1984.[2] Therefore, he now seeks benefits for a closed period of disability from his alleged onset date of September 29, 2013 through October 13, 2019. R. 1984.

ALJ Lewandowski found that during the relevant period, Julian had severe impairments of degenerative disc disease, fractures of his pelvis and left arm, depressive disorder, anxiety disorder, and substance abuse disorders (opioid, benzodiazepine, alcohol, and cocaine), but

---

[1] The remand was based on the ALJ's failure to explain why Julian's moderate concentration deficits did not translate into additional limitations in the RFC or why Julian had no limitation in persistence or pace. Julian M., No. 7:17cv504 at ECF No. 21.

[2] Julian testified that he was hired as a bucket foreman for a tree cutting company. He worked between twenty-five and forty hours per week making $22 per hour supervising the tree cutting crew. He said his employer knew about his past injuries and would allow him to leave for doctor visits and to care for his children when he needed to do so. His employer also did not require him to climb trees or cut limbs. R. 1986-88, 1991-92.

2

that none of his impairments met or medically equaled a listed impairment. R. 1950-56. The ALJ found that Julian had the residual functional capacity (RFC) to perform light work, except that he could only frequently perform postural activities and only occasionally climb stairs or ramps, and never climb ladders, ropes, or scaffolds. He could tolerate occasional exposure to industrial hazards, temperature extremes, wetness, humidity, and vibrations. He could understand, remember, and carry out simple instructions and perform simple tasks requiring no more than occasional interaction with others. He could exercise simple judgment and make simple decisions. He should avoid fast-paced work, meaning jobs that require moving rapidly with a high productivity level, tight deadlines, or quick turnaround, such as that of an assembly line worker or working as a server or bartender in a crowded restaurant. He would be expected to be absent from work twelve days per year and off task ten percent of the day outside normal breaks. R. 1956.

Relying on this RFC, the ALJ determined that Julian could not return to his past relevant work as a cabinet installer or construction worker. However, based on the testimony of the vocational expert, the ALJ found that Julian could do the work of a night cleaner, office helper, or private mail clerk, and that such jobs exist in significant numbers in the national economy. Therefore, the ALJ concluded that Julian was not disabled. R. 1968-70. The Appeals Council denied Julian's request for review, R. 2049-51, making the ALJ decision the final decision of the Commissioner.

This lawsuit followed. The magistrate judge found that the ALJ determination was supported by substantial evidence and Julian objects to several of the magistrate judge's conclusions. ECF No. 22.

**II. Standard of Review of Magistrate Judge Decision**

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[3] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'"

---

[3] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

4

de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. April 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The district court is required to review de novo only those portions of the report to which specific objections have been made." Roach v. Gates, 417 F. App'x 313, 314 (4th Cir. 2011). See also Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir. 2010) ("The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein."); Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'") (emphasis in original). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to

5

be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

**III. Judicial Review of Social Security Determinations**

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less

than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV. Plaintiff's Objections[4]

Julian objects to the following findings by the magistrate judge: (1) Substantial evidence supports the ALJ's findings on Julian's mental RFC; (2) Substantial evidence supports the ALJ's physical RFC; and (3) The ALJ properly considered Julian's subjective allegations.

### A. Mental RFC

The mental RFC assessment is discussed in Social Security Ruling 96-8p, which provides that when determining whether a claimant has a severe mental impairment at Step 2 of the sequential evaluation,[5] or meets a listing for a mental impairment at Step 3 of the sequential evaluation, the adjudicator assesses an individual's limitations and restrictions from

---

[4] Detailed facts about Julian's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 21) and in the administrative transcript (ECF No. 11) and will not be repeated here except as necessary to address his objections.

[5] In conducting the sequential evaluation, the ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or medically equals the criteria of a listed impairment; (4) Whether the claimant has the RFC to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1 or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Mascio v. Colvin, 780 F.3d 632, 634-635 (4th Cir. 2015). At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner on the fifth step. Id.

a mental impairment in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The mental disorders listings are set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. However, the limitations identified in the listing criteria are not an RFC assessment, and the mental RFC assessment used at Steps 4 and 5 of the sequential evaluation requires a more detailed assessment "by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings." Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184 at *4 (S.S.A. July 2, 1996).

In assessing the RFC, the adjudicator should consider the claimant's medical history, medical signs, and laboratory findings, the effects of treatment, reported daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured environment, and work evaluations, if available. Id., SSR 96-8p, 1996 WL 374184 at *5. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id., SSR 96-8P, 1996 WL 374184 at *7.

Julian argued to the magistrate judge and objects here that the ALJ's mental RFC determination is not supported by substantial evidence. He argues that the ALJ failed to explain why Julian's moderate limitations in concentration, persistence or pace and interacting with others did not translate into a limitation beyond that imposed. However, a review of the

record shows that the ALJ adequately considered the impairments and explained his reasoning and also that his assessment is supported by substantial evidence.

When the ALJ did the assessment at Step 3 to determine if any of Julian's impairments met or equaled a listed impairment, he determined that Julian had moderate limitations in the domains of being able to understand, remember, or apply information; to interact with others; to concentrate, persist, or maintain pace; and to adapt and manage himself. A "moderate limitation" means that a person has a fair ability to function in the area independently, appropriately, and effectively on a sustained basis. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(F)(2)(c).

Regarding concentration, persistence, or pace, the ALJ summarized Julian's reports that he had difficulty completing tasks and that he could pay attention "for about 10 minutes." The ALJ found Julian's reports partially consistent with the other evidence in the record but noted that while there were reports of his appearing drowsy during examinations, most of those were when he was under the influence of substances in early 2014. When he was not abusing substances, he typically was described by providers as alert and oriented without mention of noticeable distractibility, inattention, or slowness. In May 2018, he presented as alert and oriented, with intact cognitive function and clear and fluent speech, and reported that he had been off recreational drugs and narcotic medications for two years.

At Step 4 of the sequential evaluation, the ALJ summarized Julian's testimony at both hearings and summarized the records of his encounters with medical providers. The ALJ found that even when Julian was abusing substances, his examinations showed him to have a mostly normal mental status, apart from routine mood and affect abnormalities. Julian had

several psychiatric admissions in 2015, but his observed mental status quickly improved with treatment each time. In December 2015, he was described as having orderly thought processes, reasonably intact recent and remote memory, with cognition, attention, and concentration appearing intact.

In early 2016, Julian's psychiatric complaints began to improve and stabilize. He built a chicken coop and planned activities to do with his children over the summer. His cognition, attention, and concentration were described as intact. In January 2017, thought content, thought processes, memory, cognition, and concentration were grossly normal. He requested and his provider agreed to provide a letter stating that Julian was stable on his medications and safe to handle a gun.

Regarding his ability to interact with others, at Step 3 of the sequential evaluation the ALJ noted Julian's report in December 2013 that the physical pain he experienced caused him to be irritable with people and he preferred being alone. In February 2018, he reported that he did not like being around new people or crowds and that he did not have friends because he was unable to go out. At the hearing in 2016, Julian reported panic attacks every two to three weeks that lasted approximately 10 minutes. When asked in 2020 what sort of work environment he would find stressful, Julian said he did not like confrontation and found multi-tasking stressful. Function reports showed that Julian shopped in stores and spent time with his family despite his symptoms and he engaged in some limited social activities, such as taking his children to their friends' houses to play. He also denied problems getting along with authority figures or being fired or laid off from a job because of problems getting along with other people.

At Step 4 of the evaluation, the ALJ summarized Julian's psychiatric and other medical treatment records. He noted that primarily during the period of 2013 to 2015, Julian's impairments were severe, but did not warrant limitations in the RFC in addition to those imposed. Julian appeared anxious and guarded at times, but otherwise presented with appropriate attire, cooperative attitude, and good eye contact. In 2016, his symptoms began to improve. In 2017 he was described as doing fairly well despite ongoing stressors and had normal cooperation, eye contact, judgment, insight, and speech. In 2018, his primary care provider described him as well-groomed and dressed, alert and oriented, with intact cognitive function, cooperative attitude, good eye contact, and good insight and judgment.

As set forth above, in assessing Julian's mental RFC the ALJ concluded that he could understand, remember, and carry out simple instructions and perform simple tasks requiring no more than occasional interaction with others; exercise simple judgment and make simple decisions; that he should avoid fast-paced work; and that he would be expected to be absent from work twelve days per year and off task ten percent of the day outside normal breaks.

Julian objects that the ALJ failed to explain how these RFC findings addressed his moderate limitations in concentration, persistence, and pace and when interacting with others. However, the ALJ explicitly explained his findings as to both. When addressing the moderate limitation in concentration, persistence, and pace, the ALJ stated:

> Based on … the … evidence discussed in this decision, the undersigned finds the claimant to be only "moderately" limited in this area, and has assigned several corresponding limitations in the … residual functional capacity finding. Specifically, the limitation to simple instructions and tasks and off task behavior addresses the claimant's "moderate" difficulty in concentrating by eliminating the more detailed instructions and tasks likely to require greater levels of concentration. The claimant's "moderate" limitation in persisting is addressed by the work-related limitations that he is expected to be off-task 10% of the

11

> workday outside of normal breaks, and to be absent from work 12 days per year. The elimination of "fast-paced work" … addresses the claimant's "moderate" limitation in maintaining pace.

R. 1954.

When discussing Julian's moderate limitation in interacting with others, the ALJ stated that the totality of the evidence supported no more than a moderate limitation, "which is accommodated by the work-related limitation that the claimant can have no more than occasional interaction with others." R. 1953. These explanations are sufficient because they allow subsequent reviewers to understand how the ALJ arrived at the limitations in the RFC.

Julian also objects that the ALJ failed to properly consider the opinion of a state agency physician that Julian required a work environment with limited stressors. Joseph Leizer, Ph.D., found that Julian had moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, and pace. R. 119. More specifically, Dr. Leizer found Julian moderately limited in his ability to maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors; and to get along with coworkers and peers without distracting them or exhibiting behavioral extremes. Dr Leizer explained that Julian's affective and anxiety symptoms in the context of chronic pain affected this category but Julian remained able to "perform simple routine tasks in an environment with limited stressors." R. 124.

The ALJ found that Dr. Leizer's assessment was partially supported by evidence that Julian's mood and anxiety symptoms in the setting of his chronic pain could be expected to

affect his functioning in the broader areas of maintaining social functioning and in maintaining concentration, persistence, or pace. The ALJ further found that Dr. Leizer's conclusion that Julian could perform simple routine tasks was consistent with the other evidence, such as his grossly intact memory, concentration, and cognition during the period at issue. Julian's activities, such as caring for children and animals and helping with yardwork also demonstrated that he had the ability to perform "simple routine tasks."

However, the ALJ found that Dr. Leizer's limitation of "performing simple routine tasks in an environment with limited stressors" did not adequately accommodate all the moderate limitations he identified in his more detailed assessment of Julian's mental abilities. Therefore, the ALJ added the additional limitations that Julian would be off-task ten percent of the workday outside of normal breaks and that he have only occasional exposure to industrial hazards to account for his loss of concentration and persistence. The ALJ also added the limitation that Julian could not do "fast-paced work" and assumed he would be absent from work twelve days per year, to accommodate his moderate limitation in completing a normal workday and workweek without interruptions from psychologically based symptoms. The ALJ added the limitation of only exercising simple judgment and making simple decisions to address Julian's somewhat limited insight and judgment. R. 1965.

In the area of Julian's social interaction limitations, the ALJ found that it was possible that Dr. Leizer intended his limitation to an "environment with limited stressors" to address Julian's difficulties in this area, but the limitation "was not well explained, and require[d] some interpretation." R. 1966. The ALJ found that based on Julian's testimony at the hearing and his documented mood and anxiety symptoms, a restriction to only occasional interaction with

13

others more accurately addressed Dr. Leizer's conclusion that Julian was moderately impaired in social interactions. R. 1966.

The court finds that the ALJ thoroughly considered Dr. Leizer's opinion and clearly explained why he imposed greater, more detailed limitations in the RFC than those proposed by Dr. Leizer. The court further finds that the ALJ's assessment of Dr. Leizer's opinion is supported by substantial evidence in the record.

Julian further argued to the magistrate judge that the ALJ found that prior to early 2016, Julian was unable to perform the basic mental demands of unskilled work. The magistrate judge rejected this interpretation of the ALJ opinion, noting that the ALJ found that while Julian's "depression and anxiety were indeed 'severe,' during the requested closed period," the RFC accommodated his limitations, even during the early part of the claim period. R. 1959-60.

Julian objects that the magistrate judge erred when he found Julian mischaracterized the record and reiterates his argument that the ALJ found he was unable to perform the basic mental demands of unskilled work prior to 2016. However, this argument is wholly unsupported by the record. The ALJ stated specifically that limitations greater than those imposed in the RFC were not warranted, considering Julian's overall course of treatment and the objective medical evidence from the early part of the period through 2015. R. 1960. Moreover, the ALJ recognized that Julian was seeking disability benefits for a closed period and had he found Julian disabled for part of that period, he would have so concluded. Instead, the ALJ found Julian not disabled. Julian's argument to the contrary is without merit.

Based on the foregoing, the court agrees with the magistrate judge that the ALJ's mental RFC determination is supported by substantial evidence. Julian's objections to this finding are **OVERRULED**.

### B. Physical RFC

Julian objects that the magistrate judge erred in concluding that his arguments regarding the ALJ's failure to include manipulative limitations in the RFC findings amounted to a disagreement with the ALJ's determination and was a request to the court to reweigh the evidence. However, in addition making a conclusory argument, Julian asks the court to revisit the memorandum he filed in front of the magistrate judge and reconsider the arguments he made therein. See Objs., ECF No. 22 at 45. This objection is insufficient under Veney, 539 F.Supp.2d at 844-46, and therefore is **OVERRULED**.

### C. Subjective Allegations

Julian objects to the magistrate judge's conclusion that the ALJ properly considered his subjective allegations, citing in support Brown v. Comm'r, 873 F.3d 251 (4th Cir. 2017). In Brown, the Fourth Circuit remanded a case in part because the ALJ listed a claimant's daily activities of cooking, driving, doing laundry, collecting coins, attending church, and shopping in support of the finding that the claimant was not disabled, but did not acknowledge the limited extent of the activities or explain how the activities showed he could sustain a full-time job. See also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)) (observing that it is not enough for an ALJ to state in a conclusory manner that a claimant's testimony regarding limitations placed on his daily activities was unsupported by the medical evidence; rather, an ALJ must articulate "some legitimate reason for his decision" and "build an accurate and

15

logical bridge from the evidence to his conclusion.") Also in Brown, the court found that the ALJ misstated the record regarding the claimant's physical activities and the amount of pain he reported; misstated the effect of injections on the claimant's pain; misstated the claimant's testimony at the ALJ hearing; relied on his own observations and medical judgments in assessing the claimant's pain; and rejected the consistent opinions of the claimant's treating and examining sources in favor of the opinion of the non-examining state-agency physician. Brown, 873 F.3d at 263-266.

The magistrate judge concluded that the ALJ in Julian's case did not rely solely on his activities of daily living, but also noted that his testimony was inconsistent with his medical records, including records showing that his physical impairments have been reasonably well-managed with treatment and that his psychiatric complaints and objective findings improved and stabilized over time. The magistrate judge also noted that unlike in Brown, the ALJ did not fail to consider any doctor's opinion or wrongly credit the different medical opinions in the record.

Julian does not address this finding, but objects that the ALJ failed to acknowledge the limited extent of his daily activities or that he received assistance from others in performing them. However, he does not describe the activities, how they were limited, or who helped him perform them. Without doing so, his objection is conclusory and the court is unable to consider it. Midgette, 478 F.3d at 621.

The magistrate judge also concluded that Julian's case was distinguishable from Brown because Julian's physical and mental symptoms improved rather than declined during the relevant period. Julian objects that he is seeking a closed period of disability and reiterates his

16

argument that prior to 2016, the ALJ found him incapable of performing the basic demands of skilled work. The court already found this argument to be without merit and additionally, it is irrelevant to whether the ALJ in this case made the same mistake as the ALJ in Brown.

The court finds that the ALJ adequately explained why he discounted Julian's subjective complaints of impairment. Julian's objection to the magistrate judge's finding on this issue is **OVERRULED**.

**V. Conclusion**

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ decision is supported by substantial evidence. Therefore, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: February 15, 2022

Michael F. Urbanski
Chief U.S. District Judge
2022.02.15 09:47:30
-05'00'

Michael F. Urbanski
Chief United States District Judge